UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Aristea George,                                   Case No. 22-25424-beh

                  Debtor.                        Chapter 7

United States of America,

                  Plaintiff,

v.                                               Adv. No. 23-02027-beh

Aristea George,

                  Defendant.

## DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

      On December 12, 2022, Aristea George filed a Chapter 7 bankruptcy petition. The United States of America, on behalf of the Social Security Administration (SSA), timely filed a complaint seeking a determination that Ms. George's debt to the SSA is not dischargeable under 11 U.S.C. § 523(a)(2)(A). SSA thereafter moved for summary judgment.[1] For the reasons that follow, the Court will grant the motion.

### JURISDICTION

      The Court has jurisdiction under 28 U.S.C. § 1334 and the Eastern District of Wisconsin's July 16, 1984 order of reference entered under 28 U.S.C. 157(a). Determining whether a debt is dischargeable is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and the Court may enter a final order. 28 U.S.C. § 157(b)(1).

---

[1] Because Ms. George is unrepresented, the Court provided notice of the consequences of her failure to properly respond to SSA's motion, including both the applicable text of Federal Rule of Civil Procedure 56 and a plain English explanation of the summary judgment procedure. *See Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992). Ms. George did not respond to the motion.

# SSA STATUTORY FRAMEWORK

## A. Disability Insurance Benefits ("DIB")

The Social Security Act authorizes SSA to pay DIB to individuals who are unable to engage in "substantial gainful activity" by reason of a medically determinable impairment which has lasted or can be expected to last for no fewer than 12 months. 42 U.S.C. § 423(a), (d)(1)(A), (e). A DIB recipient may test her ability to return to work without losing benefits during a nine-month "trial work period." 42 U.S.C. § 422(c); 20 C.F.R. § 404.1592(a). When the trial work period ends, a recipient may receive benefits while earning wages during a 36-month extended re-entitlement period (or "extended period of eligibility"), provided that the recipient does not engage in substantial gainful activity. 42 U.S.C. § 423(a)(1); 20 C.F.R. § 404.1592a(a).

The disability of a DIB recipient is deemed to cease the first time she performs substantial gainful activity after the end of the trial work period. 20 C.F.R. § 404.1592a(a)(1). Once the disability ceases, SSA will continue paying benefits for the first month after the trial work period in which the recipient performed substantial gainful activity, as well as the two succeeding months. 42 U.S.C. § 423(a)(1), (e); 20 C.F.R. § 404.1592a(a)(2)(i). After this three-month grace period, a recipient is not eligible for benefits for any month in which she engaged in substantial gainful activity. 42 U.S.C. § 423(a)(1), (e); 20 C.F.R. § 404.1592a(a)(2)(i). If a recipient's benefits are stopped for this reason, she may begin receiving benefits again if she stops engaging in substantial gainful activity in a month during the extended period of eligibility. 20 C.F.R. § 404.1592a(a)(2)(i). A recipient's disability "terminates in the first month in which [the recipient] engaged in substantial gainful activity after the end of [extended period of eligibility]." 20 C.F.R. § 404.1592a(a)(3)(i).

As one court has explained, SSA relies largely on a recipient's self-reporting of eligibility for DIB benefits:

> As a condition for receiving this benefit, recipients must advise the SSA when they regain employment, they have changes in income, or their disability resolves. Those events have impacts on when an

individual is entitled to benefits or the amount or duration of benefits. The system depends on the recipient to provide forthright and timely information. The SSA regularly provides information and materials to reinforce the recipient's obligation to disclose the information. That the SSA does so reflects the lack of an alternative practical method by which it can obtain the detailed information as to all those receiving benefits on a current and ongoing basis. Though it is clear the SSA can receive information from other sources (for example, employers' reporting of FICA wages paid to individuals), that information is not timely and does not provide a reliable means of preventing overpayment. As one court noted: "Otherwise, as happened in this case, there could be a delay between the date the benefits should have ended and the date SSA discovered that the individual returned to work." *United States v. Drummond (In re Drummond),* 530 B.R. 707, 710 (Bankr.E.D.Ark.2015).

*United States v. Tucker (In re Tucker)*, 539 B.R. 861, 862–63 (Bankr. D. Idaho 2015).

**B.    Retirement Insurance Benefits**

The Social Security Act provides Old Age Benefits (also known as Retirement Insurance Benefits) to individuals who are at least 62 years old and have worked long enough at a job covered by Social Security. 42 U.S.C. §§ 402(a) & 414; 20 C.F.R. § 404.310. The Act defines 62 as "early retirement age," while a person's full retirement age depends on the year she was born. 42 U.S.C. § 416(l). For individuals born the same year as Ms. George, full retirement age is 66. *Id.*

When an individual retires early, the Act permanently reduces the benefit she is entitled to receive. 42 U.S.C. § 402(q)(1); 20 C.F.R. §§ 404.409-410. In addition, an individual who retires early is subject to an earnings limitation until she reaches full retirement age. 20 C.F.R. §§ 404.415, 430-435. SSA reduces an individual's earnings by one dollar for every two dollars she earns above the annual earnings limit. *See* 20 C.F.R. § 404.430.

## FACTS

Based on the record, and for purposes of summary judgment, the Court finds the following material facts to be undisputed:

1. On or about June 5, 2009, Aristea George filed an application for Social Security DIB. ECF No. 1-1. The application informed Ms. George that she was required to notify SSA of certain events, including if she "return[ed] to work (as an employee or self-employed) regardless of the amount of earnings." *Id.* at 6. Ms. George was aware of the need to report to SSA if she went back to work. *See* ECF No. 51-1, at 5 (56:15-21).

2. On December 11, 2009, SSA sent Ms. George a "Notice of Award," informing her that she was entitled to DIB, retroactive to September 2009. ECF No. 1-2. The notice advised Ms. George of the importance of reporting any changes in her employment status and directed her to contact a Social Security office and ask for a publication entitled "Working While Disabled How We Can Help" (SSA Publication No. 05-10095) if she returned to work. *Id.* at 3. Ms. George acknowledged receiving the notice and understood her responsibility to report changes in her employment. ECF No. 51-1, at 8–9 (71:12-72:2).

3. The notice also included a pamphlet entitled "What You Need To Know When You Get Social Security Benefits" (SSA publication No. 05-101530). The pamphlet similarly notified Ms. George of her duty to report any return to work. *See* ECF No 1-3, at 6 & 11–13. Ms. George is familiar with the pamphlet, having received and reviewed multiple versions throughout the years, and she understood the reporting instructions when she received her benefits. ECF No. 51-1, at 9–11 (72:3-24, 77:1-78:7).

4. In June 2012, SSA ran a computerized check of Ms. George's disability record, which flagged her account for unreported earnings. *See* ECF No. 1-4. SSA followed up with an investigation.

5. In July 2012, after completing its investigation, SSA sent Ms. George a "Notice of Proposed Decision," informing her that (1) based on her earnings, her nine-month trial work period ended in September 2010; (2) she was entitled to a 36-month extended period of eligibility beginning in October 2010, during which she could receive benefits for any month during which her work was not substantial and her health problems still met SSA's rules; (3) her disability had ended in October 2010 due to substantial gainful activity identified by the SSA; and

(4) she was not entitled to the disability benefits she received from February 2011 through May 2012. ECF No. 1-5.

6. In August 2012, SSA issued a decision affirming that Ms. George was not entitled to disability benefits from February 2011 through May 2012, and that she had been overpaid $12,629.30 in benefits for those months. ECF No. 1-6, at 2–3. The decision further explained that Ms. George's extended period of eligibility would last from October 2010 through September 2013, and that she was again entitled to payments beginning in June 2012, because (at least according to the information SSA had at the time), she had stopped working. *Id.* The decision also reminded Ms. George that she must "tell [SSA] right away" if she had returned to work since her last report, returned to work in the future, or if the duties and pay for previously reported work had changed. *Id.* at 4.

7. In October 2012, SSA informed Ms. George that it would recover the overpayment by withholding her benefit check. ECF No. 1-7. After receiving the withholding notice, Ms. George asked SSA to waive recovery of the overpayment. ECF No. 1-8. In January 2013, however, Ms. George acknowledged that she was at fault in causing the overpayment and agreed to a payment plan under which SSA withheld $100 per month from her disability benefits. *See* ECF No. 1-9; ECF No. 51-1, at 12 (95:3–23).

8. In July 2013, SSA learned that Ms. George again had worked without reporting her earnings. SSA sent Ms. George a "Notice of Proposed Decision," informing her that she was not entitled to benefits for any month from February 2011 through January 2013, and from March 2013 onward, because she had engaged in substantial gainful activity. ECF No. 1-10. The notice reminded Ms. George of her reporting responsibilities, and again explained the trial work period and extended period of eligibility. *Id.*

9. In September 2013, SSA advised Ms. George that her benefit overpayment had increased to $20,963.30, ECF No. 1-11, and, in October 2013, SSA informed her that she was no longer entitled to benefits because she had continued to work beyond the end of the extended period of eligibility, ECF No. 1-12.

10. Ms. George again asked SSA to waive recovery of the increased overpayment. SSA denied the request, observing that Ms. George had been notified multiple times of her reporting responsibilities, had been overpaid on two separate occasions, and should have known that her earnings would affect her continued eligibility for benefits. *See* ECF No.

1-13. Ms. George later acknowledged that she was overpaid and agreed to a payment plan of $100 per month. *See* ECF No. 1-14.

11. In November 2014, Ms. George requested expedited reinstatement of her benefits, on grounds that she had stopped working and her health conditions still met SSA's rules. *See* ECF No. 1-15. SSA granted the request in May 2015, retroactive to November 2014. *See* ECF No. 1-16. The reinstatement notice again reminded Ms. George of her ongoing responsibility to report work to SSA, as well as the rules for working while receiving reinstated benefits. *Id.* at 3. Ms. George understood her responsibility to report a return to work or increase in work hours when her benefits were reinstated. ECF No. 51-1, at 13–15 (113:12–115:16).

12. In March 2017, another earnings alert triggered a new investigation of Ms. George's work activity. As a result of the investigation, SSA issued a "Notice of Proposed Decision," finding that Ms. George had already returned to work in November 2014, when she requested reinstatement of her benefits, and had continued to work thereafter. *See* ECF No. 1-17. SSA concluded that Ms. George had never been entitled to any of the reinstated benefits she received, and her overpayment had increased to $41,416.60. *See* ECF No. 1-18.

13. In December 2018, Ms. George filed an application for retirement benefits. *See* ECF No. 1-19. SSA granted the application the next month, reminding Ms. George that she still had an obligation to report any changes to SSA "right away," and provided a pamphlet, "What You Need To Know When You Get Retirement Or Survivors Benefits" that "tells you what must be reported and how to report." ECF No. 1-20.

14. Nevertheless, Ms. George failed to report her earnings of $49,208.00 in 2019 (which exceeded the earnings limit of $17,640.00 for retired individuals who had not reached full retirement age) and, in March 2020, SSA informed Ms. George that she had incurred another overpayment of $10,333.00 as a result. *See* ECF No. 1-21; ECF No. 51-1, at 16–17 (128:1–5; 129:2–11).

15. In June 2020, Ms. George asked SSA to reconsider its decision that she was overpaid, insisting that SSA told her she no longer needed to report monthly income "because I was age 63" and stated that because she was retired, she had "no job, no income," and could not repay the agency. ECF No. 1-22, at 3.

16. In June 2021, contrary to Ms. George's statement, SSA learned that she had continued to work in 2020, with yearly earnings of $53,677.00 (more than the earnings limit of $18,240) and, as a result had incurred

yet another overpayment, of $10,488.60. *See* ECF No. 1-23. This increased her total overpayment to $55,223.60. *See* ECF No. 1-24.

17. At all times Ms. George was receiving Social Security benefits, she understood that there was an income limit which she could not exceed and that when overpayments occurred, she would have the responsibility to repay the amount. ECF No. 51-1, at 6–7 (60:21–61:8).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be "material," a fact must be "outcome-determinative under governing law." *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997).

The moving party bears the burden of establishing that summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has done so, the nonmoving party must "present affirmative evidence in order to defeat" that motion. *Anderson,* 477 U.S. at 257–58. If the non-moving party fails to properly address a movant's assertion of fact, the Court may consider the fact undisputed. Fed. R. Civ. P. 56(e)(2).

## ANALYSIS

Section 523(a)(2)(A) of the Code excepts from discharge "any debt . . . for money . . .obtained by . . . false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A).

To succeed on its claim, SSA must prove, by a preponderance of the evidence, that: "(1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which [SSA] justifiably relied." *Ojeda v. Goldberg*, 599 F.3d 712, 716–17 (7th Cir. 2010); *see also Reeves v. Davis (In re Davis)*, 638 F.3d 549, 553 (7th Cir. 2011).

Here, the undisputed evidence establishes all required elements. A "false representation" is an express misrepresentation or omission, which can be spoken, written, or demonstrated through conduct, while "false pretenses" include implied misrepresentations or conduct intended to create or foster a false impression. *See CQM, Inc. v. VandenBush (In re VandenBush)*, 614 B.R. 306, 315 (Bankr. E.D. Wis. 2020). In this case, Ms. George made multiple false representations by repeatedly failing to notify SSA of her employment and income, despite her duty to do so.

Ms. George did so knowingly, or at least in reckless disregard of the truth. She was both informed (on numerous occasions) and understood her obligations to inform SSA of any changes in employment. As for intent to deceive, "[d]etermining whether a debtor had the requisite intent under § 523(a)(2)(A) is . . . a factual, subjective inquiry decided by examining all of the relevant circumstances," and "a court may [] rely on a pattern of representations to infer intent." *6050 Grant, LLC v. Hanson (In re Hanson)*, 437 B.R. 322, 328 (Bankr. N.D. Ill. 2010).

While fraudulent intent is a question of fact that is rarely suitable for determination on summary judgment—*see, e.g.*, *In re Salgado*, 588 B.R. 209, 214 (Bankr. N.D. Ill. 2018)*; In re Hartford*, 525 B.R. 895, 903 (Bankr. N.D. Ill. 2015)—there are certain situations where summary judgment on a fraud claim may be appropriate: "A denial of knowledge may be so utterly implausible in light of conceded or irrefutable evidence that no rational person could believe it," thus making a trial on the person's state of mind unnecessary. *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998).

Such is the case here. The undisputed evidence shows that Ms. George accrued her SSA debt through a pattern of deceptive conduct in which she persistently omitted employment information despite knowing that she had an obligation to report that information to SSA. Ms. George knowingly (or at least recklessly) failed to report her earnings for at least four separate periods between 2009 and 2021. Even after acknowledging that she was at fault for the

overpayments, she continued to engage in the same behavior and incurred additional debt. Given the history and timing of Ms. George's misrepresentations and overpayments, it is implausible to believe that her failures to report her employment were not intended and designed to induce SSA to continue paying her benefits.

Finally, SSA justifiably relied on Ms. George's false representations. As explained above, the statutory scheme surrounding SSA benefits requires SSA to rely on the reporting of recipients, who bear the burden of proving eligibility. SSA fully (and consistently) informed Ms. George of her duty to notify SSA of any employment changes, and conducted multiple inquiries to affirmatively discover her unreported employment activity. *Compare United States v. Hall (In re Hall)*, 515 B.R. 515, 521 (Bankr. S.D.W. Va. 2014) (concluding on summary judgment that SSA justifiably relied on debtor's self-reporting). Ms. George's misrepresentations caused SSA to pay her more than $55,000 in benefits to which she was not entitled.

## CONCLUSION

For all these reasons, the Court concludes that the United States has met its burden of proving that Ms. George obtained a debt by false representations or false pretenses within the meaning of 11 U.S.C. § 523(a)(2)(A), and the United States' motion for summary judgment will be granted.

The Court will issue a separate order for judgment consistent with this decision.

Dated: March 6, 2025

By the Court:

Beth E. Hanan
United States Bankruptcy Judge